UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SYBLE L.,

                              Plaintiff,

v.                                                             1:19-CV-0434
                                                                         (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      KENNETH HILLER, ESQ.
  Counsel for Plaintiff                                AMY CHAMBERS, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                 JOHN MOLINARO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   KRISTIN ROGERS, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 19.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.      RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1988. (T. 78.) She completed high school. (T. 42.) Generally, Plaintiff's alleged disability consists of anxiety, depression, attention deficit hyperactivity disorder ("ADHD"), and bipolar disorder. (T. 172.) Her alleged disability onset date is October 1, 2014. (T. 78.)

### B. Procedural History

On August 17, 2015, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 78.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 1, 2018, Plaintiff appeared before the ALJ, Bryce Baird. (T. 33-77.) On May 15, 2018, ALJ Baird issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-32.) On February 6, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-28.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 17, 2015. (T. 17.) Second, the ALJ found Plaintiff had the severe impairments of: bipolar disorder, depression, anxiety, post-traumatic stress disorder ("PTSD"), migraine headaches, asthma, and lumbago. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T.

17.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b):

> including lifting and carrying up to ten pounds frequently and twenty pounds occasionally, standing or walking for up to a total of six hours, and sitting for up to a total of six hours, except the claimant: can frequently kneel, crouch, stoop and climb ramps and stairs; can never crawl or climb ladders, ropes or scaffolds; can have no concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gasses and poor ventilation; can have moderate exposure to excessive noise (as the term "moderate" is defined by the "Selected Characteristics of Occupations," an appendix to the Dictionary of Occupational Titles, often equated to "office" level noise); and is able to perform work limited to simple, routine tasks, defined as those that can be learned after a short demonstration or within thirty days.

(T. 19.)[1]  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 27-28.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly evaluate opinions of record; and failed to account for social interaction, dealing with stress, and episodic limitations; resulting in an unsupported RFC. (Dkt. No. 13 at 18-26.)  Second, and lastly, Plaintiff argues the ALJ failed to close evidentiary gaps in the record and failed to further develop the record by obtaining treating or examining medical opinion related to

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

3

Plaintiff's lumbar and other physical conditions; and therefore, the physical RFC finding was unsupported by substantial evidence. (*Id*. at 26-30.) Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 17.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues substantial evidence supports the ALJ's evaluation of medical opinions. (Dkt. No. 14 at 6-10.) Second, and lastly, Defendant argues substantial evidence supports the ALJ's RFC finding. (*Id*. at 10-13.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment or combination of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Medical Opinion Evidence and Mental RFC Determination

Plaintiff argues the ALJ failed to properly assess the medical opinion provided by treating psychiatrist, Sanjay Gupta, M.D. and impermissibly afforded more weight to the consultative examiner, Janine Ippolito, Psy.D. (Dkt. No. 13 at 18-22.) Further, Plaintiff argues the ALJ failed to account for Plaintiff's ability to interact with others, deal with stress, and "episodic limitations" in the RFC. (*Id*. at 22-26.)

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c). In addition, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

First, Plaintiff argues the ALJ improperly diminished Dr. Gupta's opinion due to Plaintiff's activities. (Dkt. No. 13 at 19.) For the reasons outlined below, Plaintiff's argument fails.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2)[2]. When assigning less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted). Those factors, referred to as "the *Burgess* factors," are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (citation omitted); 20 C.F.R. 416.927(c)(2). A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for its weight assessment. *Id*. at 96; *see Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating

---

[2] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, Plaintiff filed her claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned.").

To be sure, ALJ's should not reject a treating source's opinion based on self-reported symptoms rather than on diagnostic testing, especially in cases involving mental health. *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 9 (2d Cir. 2020). However, an ALJ may reasonably determine a treating source's opinion is entitled to less weight where the source relied on a plaintiff's self-reports of wellbeing. *Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019). Here, the ALJ did not improperly diminish Dr. Gupta's opinion because it was based on Plaintiff's self-reports and not diagnostic testing. In weighing Dr. Gupta's opinion, the ALJ properly considered Dr. Gupta's treatment notations, and other notations in the record, containing Plaintiff's reports of well-being and functioning, including reports that her medication was effective, she was doing well, and she was able to engage in activities, such as searching for employment.

On July 22, 2015, Dr. Gupta completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcohol/drug Addiction Determination" form. (T. 275-276.) He listed Plaintiff's diagnoses as: bipolar disorder, diagnosis date of November 2014; and major depressive disorder, diagnosis date of May 7, 2015. (T. 275.) Dr. Gupta indicated Plaintiff was "very limited" in her ability to: understand and remember instructions; carry out instructions; maintain attention/concentration; interact appropriately with others; and function in a work setting at a consistent pace. (T. 276.)[3] He indicated Plaintiff was "moderately limited" in her ability to: make simple decisions

---

[3] Dr. Gupta could choose between "no evidence of limitations," "moderately limited," and "very limited." (T. 276.) The terms are not defined. (*Id.*)

and maintain socially acceptable behavior without disturbing others or extremes.  (*Id*.)  Dr. Gupta opined Plaintiff "may be able to handle a low-stress part-time job with explicit written instructions and hands-on learning."  (*Id*.)  He indicated Plaintiff has "some difficulty interacting with others effectively and appropriately."  (*Id*.)

The ALJ afforded Dr. Gupta's opinion "little weight."  (T. 21, 26.)  The ALJ concluded the doctor's opinion, that Plaintiff was "very limited" in certain areas of mental functioning, inconsistent with Plaintiff's reports of functioning.  (*Id*.)

With respect to factors one and two under 20 C.F.R. § 416.927(c)(2); the frequency length, nature, and extent of treatment and the amount of medical evidence supporting the opinion, the ALJ discussed Dr. Gupta's history with Plaintiff and treatment records.  In his decision, the ALJ noted in September 2015, Plaintiff reported to Dr. Gupta her "medications are working well for her" with no side effects and Dr. Gupta's findings on examination were mostly benign.  (T. 22.)  Indeed, Dr. Gupta observed Plaintiff was oriented; cooperative; appropriately dressed; neatly groomed; her speech was clear, coherent and normal; her thought process was organized; she had no psychosis; her memory was intact; her judgment and insight were fair; her fund of knowledge was fair; she had no psychotic or depressives symptoms; and had no mania at that time.  (T. 258.)  The ALJ noted Dr. Gupta did not make any changes to Plaintiff's medication.  (T. 24, 340.)

The ALJ summarized Dr. Gupta's June 2016 appointment with Plaintiff.  (T. 24, 345.)  At that time Plaintiff reported "doing well" and was planning a vacation to Florida.  (*Id*.)  Plaintiff also reported exploring a culinary training program.  (*Id*.)  Dr. Gupta observed Plaintiff was alert and oriented; her speech was clear, coherent and normal

9

rate; her mood was normal; her affect was appropriate to her mood; her thought process was organized; she had no psychosis; her memory was intact; her judgment and insight were fair; and her fund of knowledge was fair. (T. 345.)

The ALJ considered Dr. Gupta's September 2016 examination, during which time Plaintiff reported she was "doing okay," got into culinary school, and was compliant with medications. (T. 24-25, 349.) At that time, Dr. Gupta observed Plaintiff to be alert and oriented; with no manic or depressive symptoms; her speech was clear and normal rate; her mood was "okay," her affect was full range; her thought process was organized; and she had no psychotic symptoms. (T. 349.)

As to the consistency of these opinions with the remaining evidence, factor three under 20 C.F.R. § 416.967(c)(2), the contrary medical evidence and Plaintiff's self-reported capacity for activity was inconsistent with Dr. Gupta's findings and provided good reason to assign Dr. Gupta's "very limited" opinions little weight. *See Meyer,* 794 F. App'x at 26. Therefore, although the ALJ's actual analysis of Dr. Gupta's opinion focused on Plaintiff's reported activities, the ALJ's adherence to the treating physician rule and reasoning for affording the opinion little weight can be gleaned from the entirety of his decision. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) ("An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision.")).

In addition, the ALJ's mental RFC determination, as outlined further below, was based on the record as a whole including other medical opinion evidence, such as consultative examiner's Drs. Ippolito and Bruno and supported by substantial evidence.

10

Second, Plaintiff argues the ALJ erred in affording more weight to the opinions of consultative examiners than Dr. Gupta; and further, the ALJ failed to account for the doctors' more restrictive limitations in his RFC. (Dkt. No. 13 at 22.) Here, the ALJ properly assessed the consultative examiners' opinions and the ALJ's RFC determination properly accounted for additional limitations.

As an initial matter, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e).  The opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016).  Therefore, the ALJ did not commit *per se* legal error in affording more weight to the opinions of a consultative examiner over that of a treating source.

On October 8, 2015, Janine Ippolito, Psy.D., conducted a psychiatric consultative exam of Plaintiff.  (T. 269-274.)  Dr. Ippolito opined Plaintiff was able to: follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; perform complex tasks independently; make appropriate decisions; and relate adequately with others.  (T. 271-272.)  She opined Plaintiff had mild limitations in learning new tasks and moderate limitations in her ability to deal with stress.  (T. 272.)  On November 30, 2015, non-

11

examining State agency medical consultant, D. Bruno, Psy.D., reviewed the record at the time and opined Plaintiff was capable of performing simple jobs in a low contact setting.  (T. 85.)

The ALJ afforded Dr. Ippolito's opinion great weight "because it is consistent with Dr. Ippolito's reported findings on clinical examination, [Plaintiff's] treating source records, and [Plaintiff's] reporting as to her functioning and desire not to work due to childcare concerns."  (T. 27.)  The ALJ afforded Dr. Bruno's opinion, "great weight." (*Id*.)  The ALJ concluded his opinion was "consistent with the record as a whole, including the clinical findings of treating and examining sources, [Plaintiff's] reported level of functioning and her stated reason for not seeking full-time employment."  (*Id*.)

A finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work.  The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (failure to incorporate limitations in a hypothetical is harmless error if the evidence demonstrates plaintiff can engage in simple, routine tasks or unskilled work despite limitations or the hypothetical otherwise implicitly accounted for plaintiff's non-exertional limitations); *see Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning

ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).

Overall, an RFC limiting Plaintiff to simple, routine tasks properly accounts for moderate limitations in the ability to deal with stress.  *See Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 400 (W.D.N.Y. 2018) (ALJ's mental RFC limiting plaintiff to simple routine work properly accounted for opinions plaintiff had moderate limitations in various areas of mental functioning); *see Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) (RFC for unskilled work accounted for moderate limitations with respect to stress); *see Tatelman v. Colvin*, 296 F. Supp. 3d 608, 613 (W.D.N. Y. 2017) ("it is well-settled that a limitation to unskilled work ... sufficiently accounts for limitations relating to stress and production pace"); *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017), *appeal dismissed* (Mar. 30, 2018) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning.").

Further, although Dr. Ippolito opined Plaintiff had a moderate limitation in dealing with stress, she nonetheless opined Plaintiff could perform simple and even complex tasks.  (T. 271-272.)  An RFC for simple routine work is not inherently inconsistent with limitations in a plaintiff's ability to deal with stress, or other specific areas of mental functioning, particularly where the source who provided such limitations ultimately opined the plaintiff is capable of performing simple, routine, repetitive work.  *See Wright v. Berryhill*, 687 F. App'x 45, 48-49 (2d Cir. 2017) (although consultative examiner opined plaintiff had mild to moderate limitations appropriately dealing with stress, he was nonetheless able to perform simple, routine work and therefore the court could not

13

conclude "a reasonable factfinder would have to conclude" that plaintiff lacked the ability to perform the ALJ's mental RFC) (*citing Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d. Cir. 2012)).  Therefore, the ALJ's mental RFC limiting Plaintiff to simple routine tasks is not inconsistent with the doctor's opined moderate limitations.

Here, despite affording Dr. Bruno's opinion great weight, the ALJ did not include any social limitations in the RFC.  As argued by Defendant, any error in including social limitations would be harmless.  (Dkt. No. 14 at 9-10); s*ee Zabala*, 595 F.3d at 410 (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion").  At the administrative hearing, Plaintiff's counsel asked the vocational expert, "[i]n the jobs that you cited, if an individual were limited to occasional interaction with supervisors, coworkers, and the general public[,] would that impact any of these jobs?"  (T. 74.)  The vocational expert responded, in relevant part, "[i]t would eliminate the Ticket Seller [position], but I could replace that with Packer, DOT Code 559.687-074, light, SVP 2, national number 100,000."  (T. 74-75.)  This still constitutes a significant number of jobs in the national economy.  *See Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018) ("[c]ourts have generally held that what constitutes a 'significant' number is fairly minimal"); *Gray v. Colvin*, No. 12-CV-6485L, 2014 WL 4146880, at *6, (W.D.N.Y. Aug. 19, 2014) (16,763 jobs in the national economy is a significant number).  Therefore, any error in including a social limitation would be harmless because a significant number of jobs in the national economy still exist with a limitation to occasional interaction with others.

Lastly, Plaintiff argues the ALJ failed to account for Plaintiff's need of reported services and assistance.  (Dkt. No. 13 at 24-26.)  In support of her argument, Plaintiff

stated she required help "filling out forms" and although she wanted to work treating providers found serious limitations.  (*Id*. at 25.)[4]  As noted by Plaintiff, the services she received were to help her with her special needs child and provide respite care.  (*Id*. at 11 n11; T. 358.)  As outlined above, the ALJ properly assessed medical opinion evidence in the record; although Dr. Gupta provided greater limitations in some areas of work related functioning, the ALJ properly assessed his opinion.

In addition, the ALJ properly considered Plaintiff's activities of daily living, including her reports of seeking employment, in his overall decision.  (T. 22-23, 25-26); *see Smith v. Comm'r of Soc. Sec.*, 595 F. Supp. 2d 236, 238 (W.D.N.Y. 2009) (affirming ALJ's RFC to perform unskilled work, based in part on plaintiff's activities of daily living such as looking for work).

Plaintiff was able to live independently and care for her child.  (T. 43.)  Plaintiff reported actively seeking employment and attended a job fair, and she completed culinary school.  (T. 55-56.)  Plaintiff admitted her last job ended in 2008, well prior to her alleged onset date, because it was seasonal, and that she had been trying to find a job "all over the place."  (T. 55-56, 172.)  She reported to a consultative examiner that she considered herself able to work.  (T. 269.)  She testified she only wants part-time work because full-time work would interfere with raising her child, a sentiment she also expressed to treating sources.  (T. 56, 360.)  A vocational specialist concluded Plaintiff's lack of success in finding employment was due, in part, to her lack of transportation and limited hours of availability due to being a single mother.  (T. 256-257.)  Plaintiff requested she be discharged from treatment at The Dale Association in June 2017

---

[4]      Plaintiff's counselor noted she gets "frustrated with completing DSS paperwork."  (T. 360.)

because she was satisfied she had met her goals, and subsequent outpatient treatment notes do not document any deterioration in her condition. (T. 360.) A counselor in October 2017, when told of Plaintiff's scheduled disability hearing, discussed employment applications, employment counseling, and looking and applying for jobs online. (T. 479.)

The ALJ further considered a notation by a treating source Plaintiff "waffles from wanting a job, to wanting to delay it until her daughter starts her new school year in September, or until she arbitrarily moves." (T. 25.) The provider noted Plaintiff appeared to have "restricted her job search, eliminating herself from several positions she could easily obtain." (*Id*.) Therefore, despite frustration with filling out paperwork and need for assistance in caring for a disabled child, the ALJ properly considered Plaintiff's activities in his assessment of her disability status.

Overall, in formulating Plaintiff's mental RFC determination the ALJ properly relied on the record as a whole. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). After considering the record as a whole, the ALJ appropriately accounted for the mental limitations he found supported by the overall record by limiting Plaintiff to simple, routine tasks. (T. 19.) The ALJ properly weighed the opinion evidence in the record, and the opinions of the consultative examiners ultimately supported his determination. The ALJ also properly took into consideration Plaintiff's reported daily activities in his assessment of Plaintiff's disability claim.

### B.   The ALJ's Physical RFC Determination

Plaintiff argues "the ALJ relied on no useful medical opinion in developing the [RFC] physical findings and failed to further develop the record by obtaining treating or

examining functional assessments" and therefore is unsupported by substantial evidence.  (Dkt. No. 13 at 26-29.)  For the reasons outlined below, the ALJ's physical RFC determination was proper and supported by substantial evidence in the record.

An ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion.  The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").  The ALJ is obligated to formulate a claimant's RFC based on the record as a whole, not just upon the medical opinions alone.  *Trepanier*, 752 F. App'x at 79. Therefore, Plaintiff's assertion that the ALJ's RFC determination was the product of legal error because it was not supported by a specific medical opinion is without merit.

As an initial matter, in her 2015 benefits application Plaintiff alleged disability due to mental impairments only.  (T. 79, 172.)  In her function report she noted she could lift up to thirty pounds due to a hernia and her back hurt after sitting "for more than five hours."  (T. 187.)  She reported she could walk a quarter mile before needed to stop and rest.  (T. 188.)  In her function report Plaintiff indicated she had lower back pain since the age of 9.  (T. 189-190.)  In her 2016 disability report – appeal, Plaintiff indicated she

17

had no new physical or mental impairments and was only being treated for "mental" conditions.  (T. 210.)

As the ALJ noted, the treatment notes and other evidence show that, despite alleging she became disabled in 2014, Plaintiff stopped working in 2008 when her seasonal job ended.  (T. 20, 172); *see Karlsson-Hammitt v. Colvin*, No. 13-CV-916S, 2014 WL 5500663, at *7 (W.D.N.Y. Oct. 30, 2014) (*citing Schaal v. Apfel*, 34 F.3d 496, 502 (2d Cir. 1998) and 20 C.F.R. § 416.929(c)(3) (the ALJ properly considered that claimant stopped working for reasons unrelated to allegedly disabling impairments)). The ALJ also found Plaintiff first sought medical treatment with Acacia Family Health in March 2015, several months after she alleged she became disabled.  (T. 21, 156, 240.)  At that time, she presented for an annual examination and to establish care, reporting she had not seen a primary provider since 2014, had low back pain and a history of anxiety and depression but stated both were controlled.  (T. 240-241.)  A physical examination was unremarkable, and she was diagnosed with asthma and migraines, both of which were described as stable, and abdominal pain.  (T. 240-241.)

Plaintiff returned to Acacia Family Health in April 2015 with symptoms of allergic rhinitis, in June 2015 for follow up and reporting that she felt well overall, and in August 2015 again reporting she felt well over all but with stomach pain.  (T. 234-239.)  On each visit, findings on physical exam were unremarkable.  (T. 234-239.)  In September 2015, Rabel Stephan, M.D. diagnosed a "very small nearly imperceptible right inguinal hernia."  (T. 253.)  He advised Plaintiff to continue looking for a job but to refrain from "heavy lifting."  (T. 253.)  The ALJ assigned weight to Dr. Stephan's opinion.  (T. 26.)

Plaintiff continued to seek treatment at Acacia Family Health throughout 2015, 2016, and 2017. Despite subjective complaints of low back pain, asthma exacerbation, and other symptoms, she frequently reported feeling well, and findings on physical examination continued to be unremarkable. (T. 283-321, 364-416.) Therefore, the record as a whole supports the ALJ's physical RFC determination. The ALJ properly took into account the medical evidence and Plaintiff's testimony and incorporated into Plaintiff's RFC those impairments and restrictions supported by the record. *See Johnson*, 669 F. App'x at 46 (explaining that "because the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion' ").

Plaintiff next argues the ALJ should have further developed the record. (Dkt. No. 13 at 26.) However, the ALJ is not required to develop the record any further when the evidence already presented is "adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). The ALJ relied on the evidence in the record, as outline above, in formulating Plaintiff's physical RFC. Because a medical source opinion is not required to formulate an RFC and the substantial evidence in the record supported the physical RFC, the ALJ was not required to further develop the record.

Overall, the ALJ properly assessed Plaintiff's physical RFC determination. At the time of her application and prior to her request for a hearing, Plaintiff did not allege limitations due to physical impairments. The ALJ's RFC is more restrictive than Plaintiff's testimony that she could lift up to thirty pounds, sit for five hours, and walk a

quarter mile. *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record"). The RFC is consistent with Dr. Stephen's statement Plaintiff could work, but should avoid heavy lifting. Therefore, the ALJ's physical RFC was proper and supported by substantial evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the proceedings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     March 29, 2021

*[signature: Bill Carter]*
William B. Mitchell Carter
U.S. Magistrate Judge